COMMONWEALTH of Pennsylvania, Appellee

v.

Todd Eric SCHUTZUES, Appellant.

Superior Court of Pennsylvania.

Submitted July 9, 2012.

Filed Sept. 10, 2012.

Scott B. Rudolf, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: DONOHUE, LAZARUS and STRASSBURGER *, JJ.

OPINION BY DONOHUE, J.:

Appellant, Todd Eric Schutzues ("Schutzues"), appeals from the trial court's June 28, 2011 judgment of sentence imposing 6½ to 13 years of incarceration after Schutzues violated his probation. We affirm.

The record reflects that the Commonwealth charged Schutzues with one count of rape, two counts of involuntary deviate sexual intercourse ("IDSI"), and one count each of aggravated indecent assault, indecent assault, endangering the welfare of a child, and corruption of minors.[1] These charges arose from Schutzues' sexual assault of a young girl who was six years old when the assaults began. N.T., 10/9/01, at 8. The assaults persisted over a four-year period. *Id.* at 8–9. The charges also arose from Schutzues' repeated attempts to lure a 12-year-old girl into his car, and an incident in which he exposed himself to an adult female. *Id.* at 9–10.

Schutzues pled guilty to rape, one count of IDSI, endangering the welfare of children, and corruption of minors. On October 9, 2001, the trial court sentenced

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. §§ 3121, 3123, 3125, 3126, 4304, 6301.

Schutzues to an aggregate 3½ to 7 years of incarceration followed by seven years of probation for the rape conviction. The trial court imposed no further penalty on the remaining counts. Schutzues served the maximum seven-year term of incarceration and then commenced his probation sentence. Less than six months into his probation term, Schutzues violated his probation by having contact with his young nieces.

After a May 1, 2007 hearing, the trial court found Schutzues in violation of his probation and sentenced him to 10 to 20 years of incarceration for rape, a consecutive 10 to 20 years of incarceration for IDSI, a consecutive 2½ to 5 years of incarceration for endangering the welfare of a child, and a consecutive 2½ to 5 years of incarceration for corrupting a minor. In an unpublished memorandum of July 29, 2009, this Court vacated the judgment of sentence. *Commonwealth v. Schutzeus*, 1009 WDA 2007, 981 A.2d 933 (Pa.Super.2009) (*Schutzeus I*). Specifically, we concluded that the trial court failed to consider 42 Pa.C.S.A. § 9771(c) prior to imposing a sentence of incarceration. That section provides as follows:

> (c) Limitation on sentence of total confinement.—The court shall not impose a sentence of total confinement upon revocation unless it finds that:
>
> (1) the defendant has been convicted of another crime; or
>
> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
>
> (3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S.A. § 9771(c).

The trial court conducted a new sentencing hearing on February 9, 2010, at which the court sentenced Schutzues to 42 to 84 months of incarceration for rape, a consecutive 10 to 20 years for IDSI, and consecutive 2½ to 5 year sentences for endangering the welfare of a child and corruption of minors. In an unpublished memorandum of March 31, 2011, this Court once again vacated the judgment of sentence. *Commonwealth v. Schutzues*, 526 WDA 2010, 26 A.3d 1212 (Pa.Super.2011) (*"Schutzues II "*). In *Schutzues II,* we held that the sentences for IDSI, endangering the welfare of a child and corruption of a minor were illegal because "[a] probation revocation court does not have the authority to re-sentence an offender on a final guilt without further punishment sentence after the period for altering or modifying the sentence has expired." *Id.* at 3 (*quoting Commonwealth v. Williams,* 997 A.2d 1205, 1210 (Pa.Super.2010)). We remanded for re-sentencing on the rape conviction. *Id.* at 3–4.

The trial court thereafter held another sentencing hearing on June 28, 2011 and entered the sentence currently on appeal. Schutzues raises three issues for our review, which we have edited for clarity:

1. Was [Schutzues] illegally sentenced to a term of imprisonment for having violated his probation, given that imprisonment for a probation violation is only permitted if the Commonwealth proves one of three things [set forth in § 9771(c) ]?

2. Was and is Schutzues' 6½ to 13 year probation violation sentence [ . . . ] manifestly excessive and unconstitutionally cruel under the totality of the circumstances, given (a) the *de minimus* nature of his violating conduct; (b) the rehabilitative progress made by him in custody, as evidenced by the certificates of achievement presented by him at his re-sentencing hearing; (c) the fact that

he was gainfully employed while on probation; (d) the fact that he reported to his probation agent without fail while on probation; (e) the fact that he attended all sessions of his therapy program, as required; and (f) the fact that he reported to his therapist the *de minimus* conduct deemed to violate his probation?

3. Was and is [Schutzues'] entitled, by 42 Pa.C.S.A. § 9760, to seven years of presentence confinement credit through August 26, 2006, as well as all confinement time since January 31, 2007[?]

Schutzues' Brief at 3–4.[2]

Schutzues first argues that the trial court erred in imposing a sentence of incarceration without finding that any of the § 9771(c) factors were applicable to his case. Schutzues admittedly did not include this issue in his Pa.R.A.P.1925(b) statement, but he argues that it is a challenge to the legality of his sentence that cannot be waived.[3] *See Commonwealth v. Foster,* 609 Pa. 502, 509, 17 A.3d 332, 336 (2011) (plurality) (noting that a challenge to the legality of a sentence presents a nonwaivable jurisdictional issue).

On several occasions, however, this Court has noted that a trial court's alleged lack of adherence to § 9771(c) implicates the discretionary aspects of a sentence.[4] *See Commonwealth v. Crump,* 995 A.2d 1280, 1282 (Pa.Super.2010), *appeal denied,* 608 Pa. 661, 13 A.3d 475 (2010); *Commonwealth v. Malovich,* 903 A.2d 1247, 1250–51 (Pa.Super.2006); *Commonwealth v. Ferguson,* 893 A.2d 735, 736–38 (Pa.Super.2006), *appeal denied,* 588 Pa. 788, 906 A.2d 1196 (2006); *Commonwealth v. McAfee,* 849 A.2d 270 (Pa.Super.2004), *appeal denied,* 580 Pa. 695, 860 A.2d 122 (2004). In none of these cases, however, were we presented with an argument that a trial court's failure to comply with § 9771(c) implicated the legality of a sentence.[5]

2. Schutzues concedes in his Brief that the third issue lacks merit, given well-settled precedent, most recently set forth in *Commonwealth v. Crump,* 995 A.2d 1280 (Pa.Super.2010):

When determining the lawful maximum allowable on a split sentence, the time originally imposed cannot exceed the statutory maximum. Thus, where the maximum is ten years, a defendant cannot receive a term of incarceration of three to six years followed by five years' probation. However, in a situation where probation is revoked on a split sentence, as in the case *sub judice,* a defendant is not entitled to credit for time spent on probation. **Nor is a defendant automatically granted credit for time served while incarcerated on the original sentence unless the court imposes a new sentence that would result in the defendant serving time in prison in excess of the statutory maximum.**

*Id.* at 1283–84 (citations omitted) (emphasis added). Schutzues' original sentence of 3½ to 7 years and the instant sentence of 6½ to 13 years add up to 10 to 20 years of incarceration. Even if Schutzues serves the entire 13-

year maximum on his current sentence, he will not serve prison time in excess of the statutory maximum of 20 years.

3. Ordinarily, an appellant's omission of an issue from the Pa.R.A.P. 1925(b) statement results in waiver. Pa.R.A.P. 1925(b)(4)(vii).

4. In *Schutzeus I,* Schutzues argued that the trial court failed to state its reasons for the sentence on the record. Schutzues properly preserved the issue as a challenge to the discretionary aspects of his sentence, and we remanded to the trial court to provide a statement of its reasons for imposing a sentence of incarceration pursuant to § 9771(c).

5. In *Commonwealth v. Ellison,* 293 Pa.Super. 329, 439 A.2d 136, 138–39 (1981), this Court noted in dicta that a trial court's failure to make any findings required by § 9771(c) might result in an illegal sentence. The legality, or lack thereof, of the trial court's sentence was not relevant to the reviewability of the issue, as it was unclear at the time whether the legality of a sentence was a waivable issue. *Id.* In any event, the record contained

In the instant case, Schutzues argues that the record is entirely devoid of any evidence implicating § 9771(c). The trial court made no explicit mention of § 9771(c) during sentencing, and at the conclusion of the sentencing hearing the trial court gave only a brief explanation for its sentence: "My intention from the very beginning was to max him to the most sentence I could give him." N.T., 6/28/11, at 23.[6] The trial court's attempts to give Schutzues the maximum amount of jail time possible have already resulted in two flagrantly illegal sentences and two remands from this Court, as set forth above. Despite our directive to the trial court in *Schutzeus I* to comply with § 9771(c), the trial court has continued to ignore that statute. Prior cases have treated assertions of a trial court's erroneous application of § 9771(c) as a matter implicating the discretionary aspects of a sentence. In the instant case Schutzues argues that the trial court's failure to adhere to § 9771(c) results in an illegal sentence. This Court has never had occasion to consider this issue. Given Schutzues' failure to comply with Pa.R.A.P. 1925, he has waived his § 9771(c) argument unless it implicates the legality of his sentence.

Schutzues argues that we should deem his sentence illegal in light of several Supreme Court opinions, including the Supreme Court's recent plurality [7] opinion in *Foster*, and we should treat his § 9771(c) argument as a challenge to the legality of his sentence. Schutzues' Brief at 32.

In *Foster*, the defendant was sentenced to a mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9712(a), which applies to persons convicted of certain crimes while in visible possession of a firearm. *Foster*, 609 Pa. at 505, 17 A.3d at 334. The defendant argued that the mandatory minimum sentence was illegal as applied to him because he was an unarmed co-conspirator. *Id.*[8] The defendant had no choice but to challenge the legality of the sentence, as he failed to preserve his argument in a Pa.R.A.P. 2119(f) concise statement of reasons relied upon for allowance of appeal. *Id.* The Commonwealth argued that the issue did not implicate the legality of the sentence, as the applicable five-year minimum fell within the trial court's statutory authority to impose a sentence of five to ten years of incarceration for the offense in question. *Id.* at 517, 17 A.3d at 341.

---

sufficient evidence that the defendant was likely to commit another crime and that incarceration was necessary to vindicate the trial court's authority. *Id.* at 139.

6. The trial court also stated its intent at the beginning of the sentencing hearing: "If it was up to me, I'd keep him in jail for the rest of his natural life, but the Superior Court disagrees." N.T., 6/28/11, at 4.

7. Justice Baer authored the plurality opinion in *Foster*, with Justices Todd and McCaffery joining. Justice Saylor authored a concurring opinion in which he stated that he supported the "reasoning and holding" of the plurality "[t]o the degree their opinion reflects that review of legality-of-sentence claims has been made available in limited categories of cases beyond those involving

claims that sentences exceeded statutory maximums." *Foster*, 609 Pa. at 539–40, 17 A.3d at 335 (Saylor, J. concurring). Justice Saylor disagreed with the plurality opinion "[t]o the extent [it] conceives a rule of general application and/or sanctions, as the reviewability litmus, application of the dichotomy between claims of legal error and discretionary aspects of sentencing as embodied in Section 9781 of the Sentencing Code[.]" *Id.; see* 42 Pa.C.S.A. § 9781(a) (providing that the legality of a sentence is appealable as of right) and § 9781(b) (appellant must seek allowance of appeal to challenge the discretionary aspects of a sentence).

8. In *Commonwealth v. Dickson*, 591 Pa. 364, 918 A.2d 95 (2007), our Supreme Court held that § 9712(a) does not apply to unarmed co-conspirators.

■ The Supreme Court plurality noted that statutory minimum and maximum sentences are not the only benchmarks for an illegal sentence. *Id.* at 518, 17 A.3d at 342. Merger and double jeopardy issues also implicate the legality of a sentence, even if the length of the sentence falls within the applicable statutory constraints. *Id.* The Supreme Court plurality therefore reasoned that "legality of sentence issues occur generally either: (1) when a trial court's traditional authority to use discretion in the act of sentencing is somehow affected [ ... ] and/or (2) when the sentence imposed is patently inconsistent with the sentencing parameter set forth by the General Assembly." *Id.* at 518, 17 A.3d at 342.

As an example of the first category of illegal sentence issues, the *Foster* plurality cited *In re M.W.*, 555 Pa. 505, 725 A.2d 729 (1999). In that case, the defendant argued that the trial court lacked authority to order the defendant to pay restitution to the victim because the Commonwealth failed to prove that the defendant was responsible for property damage. *Id.* at 509, 725 A.2d at 730–31. The Supreme Court held that a challenge to the trial court's statutory authority to order restitution under the circumstances of the case implicated the legality of the defendant's sentence. *Id.* at 510, 725 A.2d at 731. "As [the appellant] was challenging the legality of the [dispositional] order, as opposed to the trial court's exercise of discretion in fashioning it, he would not have been required to include a statement of reasons relied upon for allowance of appeal in his Superior Court brief." *Id.* Thus, a challenge to the trial court's authority to impose restitution was to be distinguished from an argument that the restitution is excessive. *Id.* at 510 n. 4, 725 A.2d at 731 n. 4. The latter argument would implicate the discretionary aspects of a sentence. *Id.*

The second category of illegal sentence issues set forth in *Foster*—sentences patently inconsistent with a parameter set by the General Assembly—includes sentences greater than the statutory maximum and sentences that violate merger or double jeopardy. *Foster*, 609 Pa. at 518–19, 17 A.3d at 342.

The *Foster* plurality concluded that the Supreme Court's holding in *Dickson*, which was the basis for the defendant's challenge to the sentence in *Foster*, implicated both categories. *Id.* The trial court's traditional sentencing authority was limited by the requirement to apply a mandatory minimum sentence where a defendant in visible possession of a firearm committed a predicate offense. *Id.* Likewise, the trial court's application of the mandatory minimum to a defendant not in visible possession of a firearm ran afoul of an express parameter set by the legislature— namely its decision "not to punish an unarmed co-conspirator as harshly as the person actually possessing a firearm." *Id.* The Supreme Court therefore held that the improper application of a mandatory minimum sentence to an unarmed co-conspirator implicates the legality of a sentence. *Id.* at 523–24, 17 A.3d at 345.

Schutzues relies on *Foster* and *M.W.* in support of his argument that the trial court's failure to comply with § 9771(c) implicates the legality of a sentence. Schutzues relies on the plain language of § 9771(c), which states that the trial court "shall not" impose a sentence of total confinement upon revocation of probation "unless it finds" that one of the three subsections is applicable. 42 Pa.C.S.A. § 9771(c). The General Assembly, in writing this statute, placed an obvious constraint on the trial court's discretion to incarcerate a probation violator. Thus, Schutzues argues that the "trial court's traditional au-

thority to use discretion in the act of sentencing is somehow affected" by § 9771(c), as our Supreme Court described in *Foster*. *Foster*, 609 Pa. at 518, 17 A.3d at 342.

To buttress this point, Schutzues relies on *Commonwealth v. Mathews*, 337 Pa.Super. 91, 486 A.2d 495 (1984), in which the defendant was convicted of receiving stolen property while on probation for another offense. The defendant argued that the trial court failed to state its reasons for sentencing him to total confinement upon revocation of probation on the record. *Id.* at 497. This Court agreed, noting that the mere fact of a conviction was a necessary but not sufficient condition for imposing total confinement after revocation:

> We do not agree that [§ 9771(c)] permits a sentence of total confinement simply because one has been convicted of a crime. Rather, **the plain interpretation of it is that it limits the trial court's ability to impose a sentence of total confinement for probation violations.** The court *shall not* impose a sentence of total confinement *unless* one of three circumstances is present. These circumstances [ ... ] are prerequisites to such a sentence.
>
> Once these prerequisites have been established, the court should consider the Sentencing Code's criteria for total confinement[.]

*Id.* (bolded emphasis added; italicized emphasis in original).

The *Mathews* Court treated the criteria of § 9771(c) as "necessary, but not sufficient" conditions for incarcerating a probation violator, and the defendant's new conviction satisfied § 9771(c)(1). *Id.* The Sentencing Code sets forth other factors to be considered in imposing a sentence of total confinement, *see* 42 Pa.C.S.A. § 9725, and the *Mathews* Court remanded for consideration of those factors. *Id.* at 498. The *Mathews* Court therefore did not address whether § 9771(c) implicates the legality of a sentence. Nonetheless, we agree with Schutzues' that § 9771(c) limits the trial court's authority, as described in *Foster*, and, to that end, *Mathews* supports his argument.

Next we consider § 9771(c) in light of the second category of illegal sentences described in *Foster*, i.e. those that are "patently inconsistent" with a "sentencing parameter set forth by the General Assembly." *Foster*, 609 Pa. at 518, 17 A.3d at 342. In *Foster*, the Supreme Court reasoned that a trial court's decision to punish an unarmed co-conspirator with the same severity as an armed co-conspirator would violate the parameters set forth by the General Assembly in the mandatory minimum statute. *Foster*, 609 Pa. at 518–19, 17 A.3d at 342. Given § 9771(c)'s plain language—that the trial court "shall not" impose total confinement "unless it finds" one of three prerequisites—a trial court's imposition of total confinement without making the requisite finding obviously would be "patently inconsistent" with the General Assembly's sentencing parameter. We conclude that in this case, as in *Foster*, the trial court's failure to comply with § 9771(c) implicates both categories of illegal sentence issues.

If the Supreme Court plurality opinion in *Foster* created binding precedent, this might end the matter. The plurality opinion garnered only three of the seven votes cast, however, and Justice Saylor expressed approval of the plurality opinion only to the extent that review of illegal sentences is "available in limited categories of cases beyond those involving claims that sentences exceeded statutory maximums[.]" *Id.* at 539–40, 17 A.3d at 355 (Saylor, J. concurring). Concerning the distinction between issues implicating the legality of a sentence and issues implicating the discretionary aspects of a sentence,

Justice Saylor stated that his view differed from the plurality and was similar to views Chief Justice Castille expressed in a concurring opinion.[9] *Id.*

Chief Justice Castille, joined by Justice Orie Melvin, opined that "the categorical 'illegal versus discretionary' formulation of the appellate review statute does not account for the complexity of issues that arise in the direct review sentencing realm." *Id.* at 530, 17 A.3d at 349 (Castille, C.J. concurring). Chief Justice Castille described the "classic claim of an illegal sentence" as one in which the length of the sentence exceeds the applicable statutory maximum. *Id.* In contrast, classic challenges to the discretionary aspects of a sentence include arguments that a sentence within the statutory maximum is clearly unreasonable, that the trial court failed to give a sufficient explanation for its sentence, or that the court considered improper factors or failed to take account of relevant ones. *Id.* at 530–31, 17 A.3d at 349–50 (Castille, C.J. concurring). Chief Justice Castille noted that in some cases, however, allegations of non-discretionary trial court errors have been treated as challenges to the discretionary aspects of a sentence. "The [sentencing] court has no discretion to ignore the Guidelines; it has no discretion to fail to calculate the Guidelines accurately; and it has no discretion to fail to explain deviations. But these, non-discretionary lapses have never been deemed to make the resulting sentence 'illegal.'" *Id.* (citing *Commonwealth v. Cook*, 941 A.2d 7 (Pa.Super.2007)).[10]

Section 9771(c) is not an example of a classic illegal sentencing issue or a classic discretionary sentencing issue, as defined in Chief Justice Castille's concurring opinion. Rather, compliance with § 9771(c) is explicitly non-discretionary, but our Courts have nevertheless treated arguments raised under § 9771(c) as challenges to the discretionary aspects of a sentence when the issue was classified as such by the Appellant. In *Malovich*, for example, the appellant expressly challenged the trial court's failure to apply § 9771(c) as an action inconsistent with the sentencing code, and thus a matter within the trial court's discretion. *Malovich*, 903 A.2d at 1251. The appellant was found in possession of marijuana while on probation, and he repeatedly failed to comply with rehabilitation efforts and had prior revocations. *Id.* at 1254. Thus, the record reflected the likelihood of the appellant committing another offense and the need for the trial court to vindicate its authority, in accordance with § 9771(c)(2) and (3). *Id.* The defendant argued in *Malovich* that the sentencing court gave "no consideration" to § 9771(c), but this Court rejected the argument because the sentencing transcript contradicted it. *Id.* The issue of the sentence's legality did not arise.

In *Ferguson*, the appellant raised and properly preserved his § 9771(c) challenge as a discretionary issue, and the sentencing court expressly found that he was a "significant risk to commit crimes if not incarcerated." *Ferguson*, 893 A.2d at 736–38. In *McAfee*, this Court rejected an

---

9. Justice Eakin believed that the sentence at issue was legal because it fell within the statutory maximum, and he agreed with Chief Justice Castille that the retroactive effect of *Dickson* warranted deciding the appeal on the merits. *Id.* at 541–42, 17 A.3d at 356 (Eakin, J. concurring). Like Justice Saylor, Justice Eakin did not join Chief Justice Castille's concurring opinion.

10. Chief Justice Castille reached the same result as the majority based on his belief that the retroactive effect of the *Dickson* opinion and its application to the issue at hand was sufficiently important to outweigh the need to adhere to the Supreme Court's issue preservation doctrine. *Id.* at 536, 17 A.3d at 353.

argument that the sentencing court abused its discretion in relying on an impermissible factor where, in deciding that incarceration was necessary to vindicate its authority, the court relied in part on the defendant's violation of a "stay away" order that had been lifted. *McAfee*, 849 A.2d at 276.

Despite the mandatory language of § 9771(c), it is evident from *Malovich, Ferguson, McAfee* and similar cases that application of § 9771(c)(2) and (3) requires an exercise of discretion by the trial court. The likelihood of re-offense and the need for incarceration to vindicate the trial court's authority are matters that require the consideration of many factors, and two judges considering the same record may or may not arrive at the same conclusion. Thus, the need to afford discretion to sentencing courts applying § 9771(c) is plainly evident.

Nevertheless, one might argue, consistently with the mandatory language of § 9771(c), that the failure of a trial court to make any findings implicates the legality of a sentence, whereas the quantum of the evidence in support of a trial court's findings implicates sentencing discretion. In this light, we consider the Supreme Court's opinion in *M.W.* in more detail. The *M.W.* Court found a legality of the sentence issue under the following statutory language:

§ 6352. Disposition of delinquent child.

(a) General rule.—If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:

[* * *]

(5) Ordering payment by the child of reasonable amounts of money as fines, costs, fees or restitution **as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child,** including a contribution to a restitution fund.

42 Pa.C.S.A. § 6352(a)(5) (emphasis added). The Supreme Court recognized that § 6352(a)(5) afforded the juvenile court "a broad measure of discretion to apportion responsibility for damages based upon the nature of the delinquent act and the earning capacity of the juvenile." *M.W.*, 555 Pa. at 513, 725 A.2d at 733. Nonetheless, as set forth above, the Supreme Court considered an argument that the trial court lacked statutory authority to impose restitution as an argument implicating the legality of the sentence. *Id.* at 510–11, 725 A.2d at 731. In the instant matter, as in *M.W.*, the trial court must necessarily exercise some discretion in determining whether a punishment is warranted under the applicable statute. Nonetheless, the Supreme Court in *M.W.* seemingly recognized that—despite the broad discretion afforded to trial courts under § 6352(a)(5)—cases might exist in which an order of restitution is entirely unwarranted based on the record, and an award of restitution in such a case would result in an illegal sentence. Similarly, in the instant matter, it is conceivable that in some cases a sentence of total incarceration might be entirely unwarranted under § 9771(c), despite the discretion inherent in § 9771(c)(2) and (3). Comparing the bolded language of § 6325(a)(5) to

§ 9771(c)'s use of "shall not [ . . . ] unless", it would seem that Schutzues is in an even stronger position than was the defendant in *M.W.* to argue that his argument implicates the legality of his sentence.

On the other hand, under Chief Justice Castille's concurring opinion, which Justice Orie Melvin joined and for which Justices Saylor and Eakin expressed some approval, the alleged error in the instant case is very similar to other "non-discretionary lapses" that do not implicate the legality of a sentence. *Foster*, 609 Pa. at 531, 17 A.3d at 350. These include failing to calculate the sentencing guidelines correctly and failing to explain any deviation therefrom. *Id.*

Similarly, in *Mathews*, where this Court treated application of § 9771(c) as a prerequisite to the trial court's exercise of discretion in sentencing a probation violator to total confinement, we ultimately reversed the trial court's sentence based on its failure to consider some of the factors set forth in 42 Pa.C.S.A. § 9725. *Mathews*, 486 A.2d at 498. That section provides as follows:

> The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:
>
> (1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;
>
> (2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or
>
> (3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

42 Pa.C.S.A. § 9725. The trial court has no discretion to ignore § 9725, but nonetheless a question of the trial court's adherence to that section implicated the discretionary aspects of the sentence.

Upon consideration of all of the foregoing, we are left with a line of Superior Court cases, including *Malovich*, *Ferguson*, and *McAfee* treating a trial court's application of § 9771(c) as an issue implicating the discretionary aspects of a sentence. While these cases are not binding precedent because the issue of the legality of sentence was not implicated, the cases do represent an established body of law applicable to the statute. We are unable to conclude that the Supreme Court's divided opinion in *Foster* implicitly overrules this line of cases. We find support for Schutzues' argument in the three-justice plurality opinion, but not among the four concurring Justices. While the Supreme Court's opinion in *M.W.* appears to support Schutzues' argument, *Malovich*, *Ferguson*, and *McAfee* all postdate *M.W.* Granted, this Court in *Malovich*, *Ferguson*, or *McAfee* had no occasion to consider whether an argument under § 9771(c) might implicate the legality of a sentence, but treating a trial court's application of that section as a matter of discretion is in accord with other lines of cases addressing seemingly non-discretionary errors. *See Foster*, 609 Pa. at 531, 17 A.3d at 350 (Castille, C.J. concurring).

Furthermore, treating Schutzues' argument as one implicating the legality of his sentence would obviate the need for defendants to preserve § 9771(c) arguments throughout the criminal proceeding, including before the trial court. Given that the applicability of § 9771(c) will often rest on the particular facts of a case, a defendant who wishes to challenge its applicability will facilitate appellate review by raising the challenge before the trial court.

To this end, our Supreme Court has written as follows:

> Rule [of Criminal Procedure] 708(C)(2), which states that the VOP sentencing judge 'shall state on the record the reasons for the sentence imposed' [ ... ] is not an end in itself[.] Requiring the VOP sentencing court to state the reasons for its sentence provides a procedural mechanism for the aggrieved party both to attempt to rebut the court's explanation and inclination before the sentencing proceeding ends, and to identify and frame substantive claims for post-sentence motions or appeal. The Rule creates a procedural right of immediate, contemporaneous complaint if no judicial explanation was forthcoming. In a preserved-issue, direct appeal context, if the aggrieved party contemporaneously objects to a failure to comply with the Rule, as it is supposed to, and the court responds by still refusing to state the reasons for the sentence in violation of the Rule, it is proper for the appellate court to remand for a new sentencing procedure

*Commonwealth v. Reaves,* 592 Pa. 134, 150–151, 923 A.2d 1119, 1129 (2007). While the *Reaves* Court wished to discourage litigants from deliberately failing to object to the trial court's non-compliance with Rule 708(C)(2) in hope of later obtaining relief under the Post Conviction Relief Act,[11] the same concerns apply here. Were we to accept Schutzues' invitation to treat § 9771(c) as implicating the legality of his sentence, we would defeat the purpose of Pa.R.Crim.P. 708(C)(2), and upend the law requiring aggrieved parties to timely raise and preserve a challenge to the trial court's non-compliance.

Chief Justice Castille raised the same concern in *Foster:*

> A court either has jurisdiction or it does not; a sentence either exceeds the statutory maximum or it does not. Review of a docket and the relevant governing statute establishes the claim. But, many other non-discretionary sentencing claims are not so obvious or indisputable. The claim here is an example. The applicability, or inapplicability, of the § 9712(a) firearms mandatory sentence is not obvious from the conviction and a consultation of the statute; it depends, intensely, upon the facts.

*Foster,* 609 Pa. at 534, 17 A.3d at 352 (Castille, C.J. concurring).

In addition, we believe it would prove difficult to discern a bright line distinction between whether a trial court failed to make the prescribed findings or whether the record sufficiently evinces an exercise of discretion in applying § 9771(c). For example, this Court in *Malovich* and *Ellison* found that the record reflected adequate evidence to support a sentence of total confinement under § 9771(c), though the trial court did not explicitly tie the evidence of record or its findings to any of § 9771(c)'s three subsections. *Malovich,* 903 A.2d at 1254; *Ellison,* 439 A.2d at 139.

The instant record illustrates the problem. Schutzues spoke briefly with his young nieces on several occasions at his sister's house when he went there to pick up or drop off laundry. Schutzues' contact with his minor nieces violated his obligation to have no contact with minors, and this violation is the sole basis for the instant sentence. The prosecutor deemed Schutzues' conduct predatory, but the trial court, as noted above, offered no analysis and simply bookended the sentencing hearing with statements of his desire to incarcerate Schutzues for as long as possi-

---

11. 42 Pa.C.S.A. § 9541–9546.

ble. N.T., 6/28/11, at 4, 23. While we do not condone the trial court's disregard of the law, especially in light of our prior remand, we believe it unwise to require a fact-intensive, case-by-case analysis of whether a record is so devoid of evidence and trial court findings relevant to § 9771(c) as to render a sentence illegal. This problem bolsters our conclusion that challenges under § 9771(c) are not among the narrow class of issues that implicate the legality of a sentence. Simply put, if a defendant believes the record is devoid of evidence supporting total confinement under § 9771(c), he must preserve that argument as a challenge to the discretionary aspects of the sentence.

 Absent further instruction from our Supreme Court or an *en banc* panel of this Court, we decline to conclude that a trial court's apparent failure to consider § 9771(c) results in an illegal sentence.[12] Schutzues' non-compliance with Pa.R.A.P. 1925(b) results in waiver of this argument.

Schutzues' next argument is that the trial court's sentence is excessive given the technical nature of his probation violation and Schutzues' efforts at rehabilitation. Schutzues raised this issue at the sentencing hearing and included it in his Pa. R.A.P. 1925(b) statement and a Pa.R.A.P. 2119(f) statement in his appellate brief. We therefore must review his 2119(f) statement to discern whether Schutzues raises a substantial question as to the legitimacy of the sentence.

 Schutzues argues that his probation violation—several brief, conversations with his nieces in the presences of another adult, was *"de minimus"*—and that his

record of participating in rehabilitative programs, attending drug and alcohol screenings, and avoiding criminal activity, was exemplary. Schutzues' Brief at 21. Also, Schutzues secured and maintained employment upon his release from prison. *Id.* Schutzues argues that the trial court's 6 ½ to 13 year sentence is therefore manifestly excessive given the nature of his violation. The sentence after revocation, combined with the 3½ to 7 year sentence Schutzues' served prior to his probation, adds up to the statutory maximum for rape. An argument that the trial court imposed an excessive sentence to technical probation violations raises a substantial question. *Crump*, 995 A.2d at 1282.

 First, we note the scope of review applicable to a sentence imposed following revocation of probation:

Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. An abuse of discretion requires the trial court to have acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. It is also now accepted that in an appeal following the revocation of probation, it is within our scope of review to consider challenges to both the legality of the final sentence and the discretionary aspects of an appellant's sentence.

*Id.* "Pursuant to 42 Pa.C.S. § 9771(b), when a defendant is found in violation of his probation, upon revocation the sentencing alternatives available to the court shall be the same as were available at the time

---

12. Given the uncertainty in the law governing sentence legality, we echo Chief Justice Castille's statement that practitioners are well-advised to preserve sentencing issues throughout the proceedings, including the sentencing hearing, post-sentence motions, and in Pa.R.A.P. 1925(b) and 2119(f) concise statements, even if an issue potentially implicates the sentence's legality. *See Foster*, 609 Pa. at 535 n. 4, 17 A.3d at 352 n. 4 (Castille, C.J. concurring).

of initial sentencing, due consideration being given to the time spent serving the order of probation." *Id.* at 1284. "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Id.* at 1283; *see also Commonwealth v. Fish,* 752 A.2d 921, 924 (Pa.Super.2000) ("although a court is required to explain its reasons for imposing sentence, 'it need not specifically cite or include the language of the sentencing code, it must only demonstrate that the court had considered the factors specified in the code.' ").

Notably, Schutzues does not argue that the trial court abused its discretion in failing to explain its reasoning for the instant sentence. Nor does he argue that bias or ill will played a role in the trial court's imposition of sentence.[13]

■ Concerning Schutzues' contact with his nieces, we are not persuaded by Schutzues' characterization of this violation as *"de minimus."* Shortly after serving a seven-year prison sentence for rape, Schutzues began having regular contact with his nieces, who were similar in age to the girls he victimized. We find a significant distinction between this violation and another technical violation such as missing a meeting with a probation officer or counselor. Regardless of his rehabilitative progress or compliance with the other terms of his probation, the compliance with the condition to avoid contact with minors—more so than any other—would en-

sure that Schutzues could not sexually assault another young girl.

■ Furthermore, we observe that Schutzues originally received a mitigated-range sentence for rape and no further punishment for any of the remaining offenses. Schutzues received this lenient sentence as part of a plea bargain that obviated the need for a victim to suffer the trauma of testifying. A trial court does not necessarily abuse its discretion in imposing a seemingly harsh post-revocation sentence where the defendant originally received a lenient sentence and then failed to adhere the conditions imposed on him. *See Reaves,* 592 Pa. at 138 n. 5, 923 A.2d at 1122 n. 5.

Schutzues relies on *Commonwealth v. Cottle,* 493 Pa. 377, 426 A.2d 598 (1981), in which our Supreme Court reversed the trial court's imposition of a statutory maximum sentence for robbery after the defendant missed meetings with a probation officer. In that case, the defendant voluntarily appeared in court and confessed to a robbery with which he had not been charged. *Id.* at 379–80, 426 A.2d at 599. For his honesty, the trial court sentenced him only to probation, and the defendant successfully complied for several years before he began missing scheduled meetings with his probation officer. *Id.* at 380–81, 426 A.2d at 599. The Supreme Court held that the trial court abused its discretion in finding that imposition of the maximum sentence was necessary to vindicate the trial court's authority. *Id.* at 385–86, 426 A.2d at 602.

Schutzues also relies on *Commonwealth v. Parlante,* 823 A.2d 927 (Pa.Su-

---

**13.** In any event, we can presume that the trial court was aware of the mitigating factors that Schutzues asserts, inasmuch as the trial court was in possession of a presentence report. N.T., 6/28/11, at 10. *See Commonwealth v. Walls,* 592 Pa. 557, 574 n. 7, 926 A.2d 957, 967 n's (2007) ("[w]here pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").

per.2003). In that case, a defendant convicted of forgery for purchasing $1000.00 in merchandise on a stolen credit card initially received probation. *Id.* at 928. The defendant committed a series of technical violations, and also was arrested for drug possession and underage drinking. *Id.* The trial court sentenced the defendant to four to eight years of incarceration on the forgery offenses. *Id.* This Court concluded that the length of the prison sentence was excessive, given that the defendant never committed a violent crime and that most of her probation violations were technical. *Id.* at 931.

We do not believe that *Cottle* and *Parlante* warrant a conclusion that Schutzues' sentence is excessive. Schutzues committed violent crimes against several young girls, received a lenient sentence as part of a plea bargain, and began having regular contact with his two young nieces shortly after his prison sentence expired. Schutzues has failed to establish that his second argument is meritorious.

In summary, Schutzues' first two arguments lack merit, and he has conceded the lack of merit in his third. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

STRASSBURGER, J. concurs in the result.