J-S31014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVE A. LINCOLN | : | |
| | : | |
| Appellant | : | No. 2056 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 18, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001152-2007

BEFORE: BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED SEPTEMBER 29, 2020**

Steve A. Lincoln appeals from the judgment of sentence of three to six years of imprisonment, followed by ten years of probation, after the trial court revoked his probation. We affirm.

Appellant, who was a deputy with the Dauphin County Sheriff's Department, sexually abused multiple children. In the above-captioned case, he pled *nolo contendere* in 2008 to various charges, including rape of a child and rape of a child under the age of thirteen, concerning his sexual abuse of two of those children. Appellant did not contest the finding that he is a sexually violent predator ("SVP").

The terms of the negotiated plea agreement included that Appellant would serve one to two years of imprisonment, followed by ten years of probation. During probation, Appellant would be subject to special conditions involving restrictions on contact with minors and the possession of

pornography, as well as continuing sexual offender counseling which utilized polygraph testing. *See* N.T. Sentencing, 6/18/08, at 9. The trial court sentenced Appellant in accordance with the plea agreement on June 18, 2008.

In August 2019, the Dauphin County Adult Probation Department issued a detainer against Appellant and requested a probation revocation hearing. The Department alleged that Appellant violated two of the special conditions of his probation, namely that he was unsuccessfully discharged from his sex offender counselling group and he admitted to paying for sex. The trial court held a hearing on November 18, 2019, at which Appellant's probation officer and therapist testified. At the conclusion of the hearing, the trial court revoked Appellant's probation and sentenced him as indicated above.

Appellant filed a timely motion for modification of sentence, which the trial court denied. On December 18, 2019, Appellant filed a timely notice of appeal. The trial court ordered Appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant's counsel filed the statement late, but the trial court authored an opinion addressing the substance of Appellant's claims. Accordingly, the following issues raised by Appellant are ripe for our review:[1]

---

[1] An attorney's failure to file and serve a timely 1925(b) statement in a criminal case "is a failure to perfect the appeal, it is presumptively prejudicial and 'clear' ineffectiveness." Pa.R.A.P. 1925, *Note*. Accordingly, in criminal cases, remand, not waiver, results from the late filing of a statement. However, where, as here, the trial court addressed the issues raised in a late-

> 1.    Whether the trial court abused its discretion in sentencing [Appellant] to an aggregate sentence of 3-6 years of incarceration with 10 years of consecutive probation where the evidence presented by the Commonwealth failed to establish that [Appellant] violated a specific condition of his probation and would be at risk of re-offending?
>
> 2.    Whether the trial court abused its discretion in sentencing petitioner to an aggregate sentence of 3-6 years of incarceration with 10 years of consecutive probation where the sentence is excessive and unreasonable in light of Appellant's age, mental health issues, and rehabilitative needs?

Appellant's brief at 7 (unnecessary capitalization omitted).

The following principles apply to our consideration of whether Appellant's question raises a viable challenge to the discretionary aspects of his sentence.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
>> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa.Super. 2014)

(citations omitted).

---

filed statement, no remand is necessary, and this Court may address the merits of issues. ***See Commonwealth v. Thompson***, 39 A.3d 335, 340 (Pa.Super. 2012).

Appellant filed a timely notice of appeal and preserved the issue in a timely post-sentence motion seeking reconsideration of his sentence. Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Thus, we consider whether Appellant has raised a substantial question.

Appellant avers that a sentence of total confinement upon revocation was not appropriate because the evidence did not establish that he violated a specific term of his probation or was likely to commit a new crime. *See* Appellant's brief at 17. He also contends that his aggregate sentence is manifestly unreasonable and excessive in light of his age, mental health issues, and rehabilitative needs. *Id*.

We conclude that Appellant has raised a substantial question. *See **Commonwealth v. Schutzues***, 54 A.3d 86, 98 (Pa.Super. 2012) ("An argument that the trial court imposed an excessive sentence to technical probation violations raises a substantial question."); ***Commonwealth v. Johnson***, 125 A.3d 822, 826 (Pa.Super. 2015) ("This Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question."). Therefore, we shall proceed to address the merits of Appellant's claims.

We review the VOP court's sentencing determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by

reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760 (Pa.Super. 2014).

Our Supreme Court has explained that sentencing following revocation of probation

is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by [the] requirement that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

Upon revoking probation, the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation. Thus, upon revoking probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence, although once probation has been revoked, the court shall not impose a sentence of total confinement unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

*Commonwealth v. Pasture*, 107 A.3d 21, 27–28 (Pa. 2014) (cleaned up).

With these principles in mind, we turn to Appellant's arguments. Appellant contends that, while he "may have erred" in his counselling participation and had a "setback" in his treatment, he did not violate a specific condition of his probation. Appellant's brief at 21. Rather, he posits that his actions were "twice removed from the specific conditions of his probation," and that his hesitancy to share during group therapy would be best addressed through continuing his treatment. *Id*. at 21-22. Appellant further argues that, even if his conduct constituted a technical violation of his probation, there is nothing to support a finding that he would commit another crime if he stayed in treatment. He asserts that he had been consistently compliant with his treatment and probation terms since 2014, acknowledges that he needs help, and is willing to comply with treatment. *Id*. at 24. Finally, Appellant maintains that his excessive sentence resulted from the trial court's failure to consider that he was sixty-three years old, had served in the armed forces for ten years, and struggles with the mental and emotional effects of having suffered a stroke while driving which resulted in the deaths of four of his family members. *Id*.

The trial court addressed Appellant's claims as follows:

[T]here was lengthy testimony at the revocation hearing regarding Appellant's non-compliance with sex offender treatment. Appellant participated in a high risk group that met

1.5 hours a week and was given the opportunity to disclose behaviors of noted concern to either the group or individually to the counselor. Appellant was designated as a SVP . . . and was required to take a yearly polygraph. Prior to taking the polygraph, the staff at Commonwealth Clinical Group prep the individual to have a higher success rate of passing.

In 2017, while prepping for his polygraph, Appellant disclosed that he was masturbating to minors, watching pornography, and engaging in prostitution. Appellant was given a "pass" at that time - he was admonished for his behaviors yet was permitted to continue treatment with a goal of addressing those issues. At every group after the disclosure, Appellant denied engaging in any concerning behaviors.

While preparing for his polygraph in 2019, Appellant again disclosed that he continued to masturbate to thoughts of minors, specifically those of his victims, continued to watch pornography, and continued to engage in prostitution. When asked during a group session why Appellant withheld information about engaging in concerning behaviors, Appellant stated that it was the counselor's responsibility to ask the "right" questions. Commonwealth Clinical Group gave Appellant the opportunity to redeem himself by taking another polygraph before discharging him from treatment. Appellant was deceptive on the polygraph; therefore, he was discharged.

On paper, it appeared that Appellant was progressing through treatment and had even worked himself down from an individual and two group sessions a week to an individual and one group session a week. However, Appellant only appeared to be progressing because he was withholding the fact that he was engaging in concerning behaviors. Additionally, there is no dispute that Appellant suffered a stroke in 2018. Subsequently, Appellant was medically cleared to undergo a polygraph and there was no noticeable change in Appellant's cognitive function.

At the revocation hearing, Appellant admitted that he solicited a prostitute, but minimized his responsibility in what occurred. . . . It is apparent that Appellant does not appreciate how his actions led to the criminal convictions against him.

Prior to sentencing, the court stated on the record:

> THE COURT: The trouble is your targets were very young children. Your desires are children that are prepubescent. . . . It means you do pose a danger, which means you have to be 100 percent committed to your treatment. And I think that's where you failed You started to succeed and you got sloppy, you slid back to your old ways. . . .
>
> You need to reboot and try again I'm not giving up on you but I think you need a chance to get back to where you were. I'm glad that you say you need help but it can't just be words to make the judge go easy on you. You've got to accept it yourself. . . .
>
> Taking into consideration his history, the time he served, the obvious needs that still lie ahead, and taking into consideration his age, I'm going to formulate the sentence as follows . . . .

Trial Court Opinion, 2/20/20, at 5-7 (cleaned up).

Upon review of the certified record, we discern no abuse of discretion. First, as noted above, Appellant agreed as part of his negotiated plea that he would have to successfully complete sex offender counseling and was restricted in possession of pornography. *See* N.T. Plea, 2/4/08, at 4. The trial court's recitation above, which is supported by the record, establishes that Appellant viewed child pornography and he did not successfully complete his counselling. *See* N.T. Revocation, 11/18/19, at 8. Therapist Andrea Karlunas testified Appellant's hiding of his high-risk behaviors such as watching child pornography and masturbating to thoughts of his victims from his therapist, his being deceptive in his polygraph, and his blaming his counsellors for not asking the right questions, caused Commonwealth Clinical Group to conclude that they "could no longer maintain him in the community."

- 8 -

*Id*. at 9. These behaviors, plus his admitted payment of prostitutes for sex, reasonably suggest that total confinement is warranted under the applicable legal principles. *See Pasture*, *supra* at 28.

Turning to the supposed excessiveness of the term of incarceration imposed, we first note that Appellant's claim that the court failed to consider the mitigating factors is belied by the record. The trial court clearly took into account Appellant's age and circumstances. *See* N.T. Revocation, 11/18/19, at 17, 19, 23.

"A trial court does not necessarily abuse its discretion in imposing a seemingly harsh post-revocation sentence where the defendant originally received a lenient sentence and then failed to adhere the conditions imposed on him." *Schutzues*, *supra* at 99. Even though sentencing guidelines do not apply to sentences imposed following probation revocation, *see id*. at 27, the trial court considered them, and imposed a sentence **below** the standard range. *See* Trial Court Opinion, 2/20/20, at 5 (explaining that the guidelines called for a standard-range sentence of fifty-four to seventy-two months for each of the rape convictions). Hence, Appellant was actually given lenient sentences both initially and upon revocation of his probation. We cannot conclude that such a sentence was an abuse of discretion under these circumstances. *Accord Schutzues*, *supra* at 100 (affirming judgment of sentence of six and one-half to thirteen years of incarceration after the defendant violated a term of his probation, following a negotiated lenient term

of imprisonment, by having contact with his young nieces who were of similar age of his victims).

In conclusion, Appellant has not shown that "that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Antidormi*, *supra* at 760. Thus, he is entitled to no relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/29/2020